IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DANNY E. ROGERS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2334-STA-egb |
| | ) | |
| JAMES M. HOLLOWAY, ET AL., | ) | |
| | ) | |
|     Defendants. | ) | |

**ORDER DENYING PENDING MOTIONS, DISMISSING CLAIMS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE**

On February 8, 2016, Plaintiff Danny E. Rogers, an inmate at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. Rogers's Complaint contains allegations against defendants at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. On May 12, 2016, the United States District Court for the Eastern District of Tennessee granted Rogers leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), and transferred this matter to this Court for all further proceedings. The Clerk shall record the defendants as Former Warden James M. Holloway ("Holloway"), Assistant Warden of Security Stanley Dickerson ("Dickerson"), Lieutenant Scott Wilson ("Wilson"), and Correction Officer

("C/O") First Name Unknown ("FNU") Scrubs ("Scrubs").[2] All defendants are sued in their individual and official capacities.

## BACKGROUND

Rogers alleges that on July 24, 2015, he was assigned to Unit 10, Bravo Pod, where Scrubs was the assigned pod officer and Wilson was the unit manager. Rogers alleges Scrubs had the responsibility of opening and closing the Bravo Pod front door, allowing inmates to enter and leave the pod. Scrubs was also responsible for monitoring color coded wrist bands which identified each inmate's assigned housing unit and pod.

On this date, an inspection of uniforms and cells was conducted by Wilson. During inspection, inmates were required to stand with their hands down at their sides and their cell doors open. Rogers alleges that at the end of the inspection, three known gang members assaulted him. (*Id.*) Two of the assailants wore white bands identifying them as being housed in Bravo Pod, while the third wore a green band identifying his pod assignment as Alpha Pod. (*Id.*) The inmate from Alpha Pod held Rogers while the other inmates stabbed him in the left shoulder and lower back, puncturing Roger's lung. (*Id.*) The Complaint alleges that Scrubs stood and watched the incident for ten to fifteen seconds before pushing the emergency panic button, and that he also failed to use his can of mace to break up the assault. (*Id.*) WTSP medical staff examined Rogers's injuries to determine the seriousness of his wounds and transferred Rogers to the nearest hospital for treatment for his collapsed lung. (*Id.* at 7.)

---

[2] On April 11, 2016, and on September 28, 2016, Rogers filed motions to add defendants from MCCX. (ECF No. 7, 15 & 16.) Allegations occurring at MCCX are properly litigated in the United States District Court for the Eastern District of Tennessee. If Rogers wishes to pursue these claims, he must seek relief in the proper district. Thus, all three motions are **DENIED** without prejudice to raise the issues in the proper forum.

2

Based on these factual allegations, Rogers contends that Scrubs and Wilson failed to monitor the inmates' identification bands and thereby failed to prevent the assault. (*Id.*) According to Rogers, each defendant knew WTSP was a violent and dangerous institution with a history of inmates assaulting staff and other inmates, and that inmates housed in Unit 10 Alpha Pod and Bravo Pod were the most problematic. (*Id.* at 8.) Rogers further alleges that Defendants Holloway and Dickerson put Unit 10 under "strict control movement" for purposes of control and monitoring. However, Holloway and Dickerson made the decision to remove from the unit officers who had received specialized strike force training. Rogers contends this decision caused the problems in Unit 10 to reoccur. (*Id.*) Rogers additionally alleges that he filed a grievance on January 16, 2015, detailing problems with gang members in the penitentiary and that Dickerson was aware of this issue. (*Id.* at 9, *see also* Grievance No. 10078, ECF No. 1-3 at 3-5.) On February 3, 2015, Rogers also wrote a letter to Holloway about officials allowing inmates to be in housing units to which they were not assigned. (*Id., see also* ECF No. 1-4.) Rogers seeks compensatory and punitive damages against each Defendant (*Id.* at 10.)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the Court applies the pleading standards under Federal Rule of Civil Procedure 12(b)(6),

3

announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'"); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.").

**ANALYSIS**

**I. Section 1983**

Rogers filed his Complaint on the official form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The Court holds that Rogers has failed to state a plausible claim for relief.

**A. Official Capacity Claims**

First, Rogers has alleged claims against Defendants in their official capacities. Claims against individual Defendants in their official capacities are construed as claims against their employer, the State of Tennessee. Plaintiff cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed the Eleventh Amendment to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst*

5

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

**B. Failure to Investigate – Supervisors**

Likewise, Rogers has no cause of action against Holloway and Dickerson for an alleged failure to investigate or take remedial measures, to the extent they were aware of his grievances and complaints. Rogers's claims against Defendants Holloway and Dickerson appear to be due to their supervisory roles. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Defendants Holloway and Dickerson cannot be sued merely because they failed to take action in response to Roger's complaints. Therefore, Rogers's claims against Holloway and Dickerson are **DISMISSED**.

**C. Eighth Amendment – Failure to Protect**

Rogers's claim that the Defendants failed to protect him from the attack by inmates arises under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Id.* To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*, or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298. "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

7

To establish the subjective component of an Eighth Amendment violation, a prisoner must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The Complaint alleges that Scrubs and Wilson improperly allowed an inmate into Bravo Pod and that the inmate, with others, was involved in an assault on Rogers. Rogers further alleges that Scrubs failed to intervene in a timely manner. However, the Complaint alleges no facts to show that Scrubs or Wilson were aware, prior to the assault, that the inmates, two of whom were actually assigned to Rogers' pod, posed any significant risk of harm to Rogers. And

8

even though Rogers contends that Scrubs did not use his can of mace, Rogers also alleges that Scrubs pushed the panic button within fifteen seconds of the assault. While Rogers contends that Scrubs should have acted faster, Rogers has essentially alleged that Scrubs acted negligently. This is not enough to establish deliberate indifference. Therefore, Rogers's claims against Scrubs and Wilson are **DISMISSED**.

### D. Pending Motions

On September 28, 2016, Rogers filed a motion for appointment of counsel. (ECF No. 14.) Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel." As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Because Rogers has not met the threshold showing likelihood of success, the motion is **DENIED**.

On October 2, 2016, Rogers also filed two motions to garnish the defendants' wages for violating his rights. (ECF Nos. 17 & 18.) Because the Court is dismissing Rogers's complaint, the motions are DENIED as moot.

### E. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In this case, the Court concludes that leave to amend is not warranted. Rogers cannot cure the defects in his Complaint, and any attempt to amend would be futile.

## **CONCLUSION**

The Court **DISMISSES** Rogers's Complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is **DENIED**.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Rogers in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Rogers would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Rogers nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Rogers is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by

filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Rogers, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

**IT IS SO ORDERED.**

          **s/ S. Thomas Anderson**
          S. THOMAS ANDERSON
          CHIEF UNITED STATES DISTRICT JUDGE

          Date:  July 20, 2017.